JEMMA E. DUNN
Nevada Bar No. 16229
MATTHEW T. HALE
Nevada Bar No. 16880
MICHAEL A. BURNETTE
Nevada Bar No. 16210
**GREENBERG GROSS LLP**
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Telephone: (702) 777-0888
Facsimile: (702) 777-0801
*JDunn@GGTrialLaw.com*
*MHale@GGTrialLaw.com*
*MBurnette@GGTrialLaw.com*

Attorneys for Plaintiff
Roopinder Goraya

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ROOPINDER GORAYA, an individual,

Plaintiff,

v.

INFOSYS LIMITED, a Delaware corporation,

Defendant.

Case No.: 2:26-cv-01065-ART-EJY

**PLAINTIFF ROOPINDER GORAYA'S OPPOSITION TO DEFENDANT INFOSYS LIMITED'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS**

Plaintiff Roopinder Goraya ("Plaintiff" or "Mr. Goraya") by and through his counsel of record hereby opposes Defendant Infosys Limited's ("Defendant" or "Infosys") Motion to Compel Arbitration and Stay Claims. [ECF No. 10].

///

///

///

///

///

## I. INTRODUCTION

Defendant Infosys Limited moves to compel arbitration of Plaintiff Roopinder Goraya's Family and Medical Leave Act ("FMLA") interference claim, relying on a "Mutual Arbitration Agreement" that was, in reality, a non-negotiable condition of employment presented on a take-it-or-leave-it basis to an individual job applicant by one of the largest information technology companies in the world. The Agreement is unenforceable because it is both procedurally and substantively unconscionable. Infosys demanded that Mr. Goraya waive his right to a jury trial as a precondition of receiving a job offer, gave him no meaningful opportunity to negotiate or reject the arbitration clause without forfeiting employment, and drafted terms that favor Infosys by introducing ambiguity and cost-risk that would not exist in a federal court proceeding. The Court should deny the motion.

## II. LEGAL STANDARDS

"The Federal Arbitration Act ("FAA") provides for the enforcement of arbitration agreements in any contract involving interstate commerce." *Sasiada v. Switch, LTD.,* No. 2:23-CV-88 JCM (NJK), 2024 WL 454994, at *1 (D. Nev. Feb. 5, 2024) (citing 9 U.S.C. §§ 1–2). "Under the FAA, arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract.'" *Id.* "The Act further dictates that a party to an arbitration agreement may invoke his or her rights under the Act by petitioning the district court 'for an order directing that such arbitration proceed in the manner provided for' in the agreement." *Id.* (citing 9 U.S.C. § 4).

Unconscionability is recognized as a contract defense to invalidate an arbitration agreement. Under Nevada law, an arbitration agreement is unconscionable only if it is both procedurally and substantively unconscionable. *U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32, 40 (Nev. 2018).

## III. LEGAL ARGUMENT

### A. The Agreement Is Procedurally Unconscionable

An arbitration agreement is procedurally unconscionable "either because (1) the contract is an adhesion contract, or because (2) the terms are not readily ascertainable upon a review of the

contract." Sasiada, 2024 WL 454994, at *2 (citing *CVSM, LLC v. Doe Dancer V*, 435 P.3d 659, 2019 WL 978679, at *2 (Nev. 2019)).

An adhesion contract is "a standardized contract form offered to consumers of goods and services essentially on a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain." *Obstetrics and Gynecologists v. Pepper*, 693 P.2d 1259, 1260 (Nev. 1985). The Nevada Supreme Court recently applied a similar adhesion analysis to an employment arbitration provision incorporated into an executive's contract, confirming that the doctrine reaches employment arbitration agreements. See *Nat'l Football League v. Gruden*, 573 P.3d 1240 (Nev. 2025) (analyzing arbitration clause incorporated into coaching contract as a contract of adhesion under California law).[1]

"Terms of a contract are not readily ascertainable if they are 'presented or negotiated in a way that conceals the terms' meaning." *Sasiada*, 2024 WL 454994, at *3 (citing *CVSM, LLC*, 2019 WL 978679, at *2). "For example, terms are not readily ascertainable if they are in fine print or 'buried in an endnote or exhibit.'" *Id.*

Both grounds are present here. The Agreement is a classic adhesion contract, and its material cost terms are presented in a way that conceals their practical effect on the employee.

**1. The Agreement Is a Contract of Adhesion.**

Infosys's own declarant, Senior Practice Lead Joanne Polanowski, confirms that "[i]nfosys's longstanding procedure has been to require every applicant to agree to an Arbitration Agreement as a condition of employment." [ECF No. 10-1 ¶ 6]. Infosys did not offer Mr. Goraya the choice of an employment relationship without arbitration. It presented him with a standardized document through an electronic "Candidate Portal" and conditioned his employment on acceptance of the entire

[1] No Nevada decision squarely holds that the contract of adhesion analysis does not apply to employment arbitration agreements. *Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 116 Nev. 405, 411, 996 P.2d 903, 907 (2000) ("We have never applied the adhesion contract doctrine to employment cases."). Plaintiff's position is that this statement described the absence of prior application, not a holding that the doctrine cannot reach employment agreements, particularly where the court resolved the claim on independent grounds.

package, including the arbitration clause. [ECF No. 10-1 ¶¶ 6-7]. The offer letter "explicitly stated that Plaintiff's employment with Infosys was contingent upon Plaintiff's acceptance of a Mutual Arbitration Agreement." [ECF No. 10-2]. There was no opportunity to negotiate any term of the Agreement, and no opt-out mechanism was provided. [ECF No. 10-2]; [ECF No. 10-3].

An individual seeking employment with a multinational corporation has no realistic ability to refuse a standardized arbitration clause presented as a precondition of the job offer. The disparity in bargaining power between Mr. Goraya, an individual applicant seeking employment, and Infosys Limited, an Indian corporation with operations across multiple states, cannot seriously be disputed. [ECF No. 10-1 ¶ 3]. Mr. Goraya's only choice was to accept the Agreement in its entirety or walk away from the position.

The Agreement's self-styled "KNOWING AND VOLUNTARY AGREEMENT" disclaimer does not save it from this conclusion. [ECF No. 10-3 p.7]. That section states that Infosys "advised" Mr. Goraya to consult an attorney before accepting, but the right to consult a lawyer does not create a realistic opportunity to bargain where, as here, Infosys made clear through its own standardized process that the arbitration clause was non-negotiable for every applicant. [ECF No. 10-1 ¶¶ 6-7]; [ECF No. 10-3 p.7]. A boilerplate advisory placed at the end of a take-it-or-leave-it contract cannot transform coerced acceptance into a freely negotiated waiver of the right to a jury trial. [ECF No. 10-3 p.7].

As such, the Agreement’s nature as a contract of adhesion satisfies procedural unconscionability.

**2. The Agreement's Material Terms Are Not Readily Ascertainable.**

The Agreement's cost provisions are drafted in language that conceals their practical meaning from the employee. The Agreement represents that "to the extent required by law Infosys will bear the arbitrator's fee and any other type of expense or cost that the Employee would not be required to bear if the dispute or claim was brought in court." [ECF No. 10-3 p. 5]. In practice, the phrase "to the extent required by law" is a conditional carve-out that Infosys can invoke to contest its payment obligations whenever no clear statutory mandate applies, a dispute that would not exist in federal court. *Id.* The true scope of Mr. Goraya's cost exposure is not ascertainable from the face

of the Agreement.

An arbitration agreement is a contract governed by ordinary state contract principles and "a valid contract cannot exist when material terms are lacking or are insufficiently certain and definite." *U.S. Home Corp. v. Michael Ballesteros Trust*, 134 Nev. 180, 188, 415 P.3d 32, 40 (2018); *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Cost allocation is a material term here, because it defines the practical price of the forum Mr. Goraya is asked to accept. Yet its meaning turns entirely on the undefined qualifier "to the extent required by law," which supplies no ascertainable answer to who actually pays. At signing, Mr. Goraya could not reasonably determine his financial obligations in arbitration from the face of the document. Where the material terms of the purported agreement cannot be ascertained, there was no meeting of the minds, and no enforceable agreement to arbitrate was formed.

**B. <u>The Agreement Is Substantively Unconscionable</u>**

Substantive unconscionability turns on whether an agreement's terms are one-sided rather than bilateral. *Sloan v. Ladah L. Firm PLLC*, No. 2:19-cv-01168, 2020 WL 5819771, at *2 (D. Nev. Aug. 31, 2020) (citing *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162-63 (Nev. 2004)). Indeed, contract terms that violate public policy are often one-sided in favor of the more powerful party, rendering them substantively unconscionable. *Gonski v. Second Jud. Dist. Ct. of State ex rel. Washoe,* 126 Nev. 551, 563, 245 P.3d 1164, 1172 (2010), overruled on other grounds by *U.S. Home Corp. v. Michael Ballesteros Tr.,* 134 Nev. 180, 415 P.3d 32 (2018).

First, the cost provision runs entirely in Infosys's favor. Infosys commits to bearing arbitrator fees and forum costs only "to the extent required by law," while Mr. Goraya must separately pay "an amount equal to the filing fee to initiate a claim in the court of general jurisdiction" just to commence arbitration. [ECF No. 10-3 p. 5]. The result is asymmetric: Mr. Goraya bears defined upfront costs, but Infosys, the drafter, retains discretion to contest whether it owes anything where no statute clearly compels payment. A cost structure that fixes the employee's burden while leaving the employer's obligation to its own discretion is a one-sided term favoring the more powerful party. *Id.*

Second, compelling arbitration of Mr. Goraya's FMLA claim contravenes the public policy

the statute embodies. Congress enacted the FMLA to protect employees from being penalized for taking leave necessitated by a serious family health condition. 29 U.S.C. § 2601(b). Mr. Goraya was terminated on the morning of July 12, 2024, while his son was recovering from surgery and after Infosys had approved his FMLA leave. Consigning this claim to arbitration, under cost terms the employer can later dispute and with no access to a jury, undermines the remedial purpose the FMLA was designed to serve. A term that contravenes the public interest or public policy is substantively unconscionable, and requiring arbitration of this claim on these terms fits that standard.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Roopinder Goraya respectfully requests that the Court deny Defendant's Motion to Compel Arbitration and Stay Claims in its entirety.

DATED: July 6, 2026 GREENBERG GROSS LLP

By: */s/ Michael A. Burnette*
Jemma E. Dunn
Matthew T. Hale
Michael A. Burnette

Attorneys for Plaintiff
Roopinder Goraya

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of July, 2026, a true and correct copy of **PLAINTIFF ROOPINDER GORAYA'S OPPOSITION TO DEFENDANT INFOSYS LIMITED'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By *<u>/s/ Mario Hurtado</u>*
Mario Hurtado, an Employee of
GREENBERG GROSS LLP