Adam Hosmer-Henner (NSBN 12779)
Katrina Weil (NSBN 16152)
**McDONALD CARANO LLP**
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
Telephone: (775) 788-2000
ahosmerhenner@mcdonaldcarano.com
kweil@mcdonaldcarano.com

Susan P. Elgin *(Admitted Pro Hac Vice)*
**FAEGRE DRINKER BIDDLE & REATH LLP**
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
Telephone: (515) 248-9000
susan.elgin@faegredrinker.com

*Attorneys for Defendant*

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ROOPINDER GORAYA,<br>Plaintiff,<br>v.<br>INFOSYS LIMITED,<br>Defendant. | Case No. 2:26-cv-01065-ART-EJY<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY CLAIMS** |

Defendant Infosys Limited ("Infosys") files this reply in support of its Motion to Compel Arbitration and Stay Claims.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Roopinder Goraya admits that he agreed to be bound by a Mutual Arbitration Agreement (the "Agreement") upon being hired by Infosys. He now challenges that Agreement as both procedurally and substantively unconscionable. Because it is neither, this Court should grant Infosys's motion to compel arbitration in line with Nevada's "fundamental policy favoring the

enforceability of arbitration agreements" and the "strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties." *Kumar v. Tata Consultancy Servs. Ltd.*, 804 F. Supp. 3d 1133, 1136 (D. Nev. 2025) (internal quotation marks omitted).

## II. ARGUMENT

In order to invalidate an arbitration agreement, Nevada law requires that it must be *both* procedurally and substantively unconscionable. *Jackson v. Unicity Int'l*, No. 2:25-CV-00738-GMN-NJK, 2026 WL 811380, at *7 (D. Nev. Mar. 23, 2026). Here, the Agreement is neither.

### A. The Agreement Is Not Procedurally Unconscionable.

Plaintiff first claims that the Agreement is procedurally unconscionable because it is a "contract of adhesion." (ECF No. 12 at 3-4). "Under Nevada law, '[a] contract clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract . . . .'" *Jackson*, 2026 WL 811380, at *7 (quoting *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 885 (Nev. 2023)). However, Plaintiff offers no evidence in support of his claim that this is a contract of adhesion. For instance, Plaintiff does not allege that he tried to negotiate the terms of the contract or that Infosys was unwilling to negotiate or that he did not have an opportunity to review the contract. *See Tough Turtle Turf*, 537 P.3d at 886 (no procedural unconscionability where employees "failed to show that they did not have a meaningful opportunity to review the agreement"). Further, the adhesion contract doctrine does not apply to employment cases. When the plaintiff's counsel made this exact argument in *Jackson v. Unicity Int'l*, Judge Navarro soundly rejected it, writing:

> As to Plaintiff's adhesion contract argument, the Nevada Supreme Court has declined to apply the unconscionable adhesion contract doctrine to employment contract cases. *See D.R. Horton*, 96 P.3d at 1162; *Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 996 P.2d 903, 907 (Nev. 2000) ("We have never applied the adhesion contract doctrine to employment cases."). The Court therefore rejects Plaintiff's contract of adhesion argument.

*Jackson*, 2026 WL 811380, at *7; *see also Kindred*, 996 P.2d 903, 907-909 (Nev. 2000) (finding an employee's assertion that her arbitration agreement was an invalid contract of adhesion because

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

refusing to sign would have barred her employment was meritless because it was made "[w]ithout citing any evidence" and compelling arbitration of her FMLA claim).[1]

In support of his argument, Plaintiff further relies on *Nat'l Football League v. Gruden*, 573 P.3d 1240, 2025 WL 2317407 (Nev. 2025) (unpublished disposition). (ECF No. 12 at 3). But, as Plaintiff's own parenthetical concedes, *Gruden* analyzed the arbitration provision there under California law pursuant to a choice-of-law provision, so it neither addresses Nevada's adhesion doctrine nor disturbs *Kindred*. (ECF No. 12 at 3). *Gruden* is also factually inapposite: it involved the 447-page NFL Constitution incorporated by reference into a seven-page coaching contract, an arbitration provision that by its unambiguous terms did not reach former employees like Mr. Gruden, and an arbitrator who was the NFL Commissioner—an interested party—rather than a neutral. 2025 WL 2317407, at *2-4. Here, by contrast, the Agreement is a short, standalone document attached directly to Plaintiff's offer letter, expressly covers disputes arising out of Plaintiff's "separation from employment," and designates a neutral AAA arbitrator. (ECF No. 10-3).

Next, Plaintiff claims that the Agreement is procedurally unconscionable because the "material terms are not readily ascertainable." (ECF No. 12 at 4-5). More specifically, Plaintiff claims that the Agreement is unclear regarding cost allocation between the parties, and that cost allocation is a material term of the Agreement.

As an initial matter, Plaintiff incorrectly categorizes this argument as one of procedural unconscionability, (ECF No. 12 at 4-5), but that analysis addresses how the agreement was formed—not the substance of a particular provision. *See D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1165 (Nev. 2004), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 415 P.3d 32 (Nev. 2018).

---

[1] Plaintiff's footnote concedes the critical point: no Nevada decision has ever applied the adhesion doctrine to an employment arbitration agreement. (ECF No. 12 at 3 n.1). His attempt to recast *Kindred*'s statement as a mere description is contradicted by the opinion, which rejected precisely the argument that Plaintiff raises here. 996 P.2d at 907. Nor was the claim "resolved on independent grounds": the court gave its reasons cumulatively, and each addressed the same adhesion challenge. *Id.* In any event, whatever the doctrine's theoretical outer limits, Plaintiff identifies no Nevada authority extending it to employment agreements, and this Court should decline his invitation to expand Nevada law where Nevada's highest court has repeatedly declined to do so.

In any event, the Agreement's terms are clear and readily ascertainable. The Agreement is written in plain English, clearly states the cost allocation, identifies the AAA Employment Arbitration Rules as the governing rules, and specifies the arbitration procedures in detail. (ECF No. 10-3.) *See Kumar*, 804 F. Supp. 3d at 1140 ("The arbitration agreement reveals that its terms were clear and does not appear to be any attempt to conceal the terms of arbitration."). The cost provision explicitly states that Infosys will bear the arbitrator's fee and costs unique to arbitration "to the extent required by law," and the employee's only obligation is to pay "an amount equal to the filing fee to initiate a claim in the court of general jurisdiction." (ECF No. 10-3 at 5.) There is nothing hidden, unclear, or incomprehensible about these terms. The cost provision appears on the face of a standalone agreement, in the same font as every other term—not in fine print or buried in an endnote or exhibit. *See U.S. Home Corp.*, 415 P.3d at 40-41 (arbitration provision was not procedurally unconscionable when it appeared in the same font size as the other provisions and was not buried in an endnote).

Nor does the cost provision's reference to governing law mean, as Plaintiff contends, that "no enforceable agreement to arbitrate was formed." (ECF No. 12 at 5). Contracts routinely define obligations by reference to applicable law, and a term that incorporates legal requirement is not indefinite—particularly where, as here, the AAA rules and fee schedule that the Agreement incorporates supply a concrete answer to which party pays which costs. *See infra* Section II(B). Plaintiff cannot manufacture a failure of contract formation after expressly acknowledging that he "read, underst[ood], and accept[ed] all the terms and conditions" of his offer of employment, including the Agreement. (ECF No. 10-1; ECF No. 10-4).

Accordingly, Plaintiff has identified no procedural unconscionability, and the Court's analysis can end there. *Jackson*, 2026 WL 811380, at *7 ("[B]ecause Nevada law requires both procedural and substantive unconscionability, the Court need not examine substantive unconscionability before reaching the conclusion that the agreement was not unconscionable.").

/ / /

/ / /

/ / /

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

**B. The Agreement Is Not Substantively Unconscionable.**

Plaintiff argues the phrase "to the extent required by law" in the cost provision renders the Agreement substantively unconscionable because it allegedly creates ambiguity about Infosys's payment obligations. (ECF No. 12 at 5). This argument fails for multiple independent reasons.

First, the Agreement's cost provision does not shift costs to Plaintiff. To the contrary, it affirmatively provides that "to the extent required by law Infosys will bear the arbitrator's fee and any other type of expense or cost that the Employee would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration." (ECF No. 10-3 at 5.) The employee's only obligation is to pay "an amount equal to the filing fee to initiate a claim in the court of general jurisdiction." (*Id.*) This is a reasonable, not one-sided, cost-allocation. Nor is the Agreement one-sided in any broader sense: it is mutual—Infosys and Plaintiff alike are bound to arbitrate covered disputes, and both waive the option for the disputes to be heard in Court. (*Id.*).

Second, the phrase "to the extent required by law" is a standard, widely used provision that ensures compliance with governing law. Far from creating ambiguity, it incorporates existing legal requirements—ensuring that the Agreement adapts to and complies with the law as it evolves. Moreover, Plaintiff fails to present any evidence that the cost of proceeding in arbitration would be prohibitively expensive. The Supreme Court's decision in *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 90–92 (2000), is dispositive. There, the Court held that "where . . . a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92. The Court further held that "[t]he 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. Plaintiff has not submitted—and cannot submit—any evidence that the Agreement's cost provision will impose prohibitive costs as it is drafted to ensure that Plaintiff's administrative cost obligations are no greater than in this lawsuit. His argument rests entirely on speculation about what "to the extent required by law" might hypothetically allow—precisely the kind of speculative cost concern *Green Tree* rejected.

/ / /

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020

Third, Plaintiff's characterization of the phrase "to the extent required by law" as a "conditional carve-out" that Infosys can "invoke to avoid payment" misreads the provision. (ECF No. 12 at 4). The phrase does not limit Infosys's obligations—it defines them by reference to the legal requirements that govern cost allocation in employment arbitration. The AAA's National Rules for the Resolution of Employment Disputes[2]—which the Agreement incorporates—require the employer to bear the arbitrator's compensation and administrative expenses. *See* AAA Employment Arbitration Rules, Rules 52 and 53, available at https://www.adr.org/media/aktbpg2y/2026_employment-arbitration-rules-and-mediation-procedures.pdf. (last visited July 8, 2026). Those Rules incorporate the AAA Employment/Workplace Fee Schedule, which similarly require the company to pay the arbitrator's expenses and compensation. *See* https://www.adr.org/media/m2vnoi2t/2026_employment-workplace-fee-schedule-costs-of-arbitration.pdf (last visited July 8, 2026). Specifically, the AAA Fee Schedule only requires Plaintiff to pay a $350 filing fee, which is less than the $405 fee Plaintiff paid to file in this Court. *Id.* In contrast, the AAA would require Infosys to pay a $2,100 filing fee. *Id.* This is certainly not an unconscionable, one-sided allocation of fees and costs. No reasonable reading of this provision favors Infosys at Plaintiff's expense.

In addition to the cost provision, Plaintiff argues—without support—that his FMLA claim should not be compelled to arbitration because that would violate public policy. (ECF No. 12 at 5-6). The Nevada Supreme Court disagrees, stating conclusively that "Congress has not precluded FMLA claims from being subject to arbitration." *Kindred*, 996 P.2d at 909. The Court noted that the FMLA "contains nothing to suggest that agreements to arbitrate are unenforceable" and that there is no "legislative history to support such a conclusion" nor "an inherent conflict between the FMLA and arbitration." *Id.* (citing *Satarino v. A.G. Edwards & Sons, Inc.*, 941 F.Supp. 609, 613 (N.D. Tex. 1996)). Any state-law rule to the contrary would, in any event, be preempted: "[w]hen state law prohibits outright the arbitration of a particular type of claim . . . [t]he conflicting rule is displaced by the FAA." *Marmet Heath Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012). Finally, Plaintiff's

---

[2] The AAA has since retitled these rules as its "Employment/Workplace Arbitration Rules."

account of the circumstances of his termination speaks to the merits of his FMLA claim—which are for the Arbitrator—not to the enforceability of the Agreement. (ECF No. 12 at 5-6).

Finally, Plaintiff's argument contradicts the FAA's "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). Accordingly, the Agreement is not substantively unconscionable, and the Court should grant Infosys's motion to compel arbitration.

## III. CONCLUSION

Plaintiff Roopinder Goraya agreed to arbitrate this matter with Infosys in 2017, when he received his offer letter and accepted the terms of the Arbitration Agreement. Federal and Nevada law require Plaintiff to honor that agreement. Therefore, Infosys asks the Court to enter an order staying this case and compelling Mr. Goraya to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

**DATED**: July 13, 2026.

**McDONALD CARANO LLP**

By: /s/ *Adam Hosmer-Henner*
Adam Hosmer-Henner (NSBN 12779)
Katrina Weil (NSBN 16152)
100 West Liberty Street, Tenth Floor
Reno, Nevada 89501
ahosmerhenner@mcdonaldcarano.com
kweil@mcdonaldcarano.com

FAEGRE DRINKER BIDDLE & REATH LLP
Susan P. Elgin *(Admitted Pro Hac Vice)*
801 Grand Avenue, 33rd Floor
Des Moines, Iowa 50309
susan.elgin@faegredrinker.com

*Attorneys for Defendant*

McDONALD CARANO
100 WEST LIBERTY STREET, TENTH FLOOR • RENO, NEVADA 89501
PHONE 775.788.2000 • FAX 775.788.2020