UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROOPINDER GORAYA,

Plaintiff,

v.

INFOSYS LIMITED,

Defendant.

Case No. 2:26-cv-01065-ART-EJY

ORDER ON ECF No. 10

Before the Court is Defendant Infosys Limited's ("Infosys") motion to stay proceedings and compel arbitration against Plaintiff Roopinder Goraya ("Goraya"). (ECF No. 10). For the following reasons, the Court GRANTS Infosys's motion.

**I. BACKGROUND**

This case stems from Infosys's termination of Goraya's employment. Goraya spent seven years working as a Principal Consultant for Infosys. (ECF No. 1 at 3). Goraya alleges that he took protected leave from work under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), when his infant son was hospitalized and needed emergency brain surgery. *Id.* at 2. Six days into his approved leave from work, Goraya was terminated. *Id.* at 3. Goraya claims that his termination was pretextual and he was wrongfully fired in retaliation for exercising his FMLA leave rights. *Id.* at 3–4. He is seeking compensatory damages, liquidated damages, and attorneys' fees and costs. *Id.* at 6.

Infosys brought forth a motion to stay proceedings and compel arbitration. (ECF No. 10). Both parties agree that Goraya was required to sign an arbitration agreement (ECF No. 10-3) in order to accept his employment offer from Infosys in June 2017. (*See* ECF Nos. 10 at 3, 12 at 2). The arbitration agreement covers

claims for "discrimination, harassment or retaliation" under the "Family and Medical Leave Act of 1993." (ECF No. 10-3 at 2). Goraya filed his opposition to the motion to compel (ECF No. 12), and Infosys replied in support (ECF No. 13).

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires courts to "direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citation omitted). Accordingly, "the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Id.* (*quoting Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). Because an agreement to arbitrate is a matter of contract, to determine whether a contract exists, courts "generally . . . apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Nat'l Football League v. Gruden*, 2025 WL 2317407 at *1 (Nev. 2025) ("While the FAA creates a presumption in favor of arbitrability, that presumption is constrained by general principles of contract law.").

The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014); *see also Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1057 (D. Nev. 2019) (citing *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). In deciding a motion to compel, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Accordingly, the Court will hold that a contract to arbitrate was formed if Infosys demonstrates, while viewing the evidence in the light most favorable to Goraya, "there is no genuine dispute as to any material fact" as to the formation of the arbitration agreement.

FED. R. CIV. P. 56(a); *see also Jenkins v. TTEC Servs. Corp.*, 830 F. Supp. 3d 1060, 1066 (D. Nev. 2026) (internal citations omitted) (a district court considering a motion to compel arbitration must "give to the opposing party the benefit of all reasonable doubts and inferences that may arise."); *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (same).

## III. DISCUSSION

### A. Valid Arbitration Agreement Exists Between Goraya and Infosys

Infosys has met their burden in demonstrating that a valid agreement to arbitrate Goraya's claims exists. Under Nevada state law, a contract is formed when there is "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d. 1254, 1257 (2005). Infosys has submitted the arbitration agreement (ECF No. 10-3), Goraya's offer of employment, which was "contingent" upon signing the agreement (ECF No. 10-2), and an affidavit from a member of Infosys's Talent Acquisition Team that discusses Goraya's acceptance of the arbitration agreement in support of their motion (ECF No. 10-1). Goraya contests if there was a sufficient "meeting of the minds" to even form a contract, because of the agreement's indefinite and material provisions regarding cost allocation between parties. (ECF No. 12 at 5). Goraya does not appear to dispute the other elements of contract formation. In addition, he raises the defense that the arbitration agreement is unconscionable and thus unenforceable. *See id.* at 2. ("Unconscionability is recognized as a contract defense to invalidate an arbitration agreement."). The Court will address Goraya's unconscionability defense and why the material terms of the contract are sufficiently defined to establish a valid contract below. Considering the facts presented, the Court ultimately finds that Infosys has proven that a valid and enforceable arbitration agreement exists with Goraya.

The Court turns to Goraya's argument that the contract between the parties should not be enforced on unconscionability grounds. Goraya argues that the agreement is both procedurally and substantively unconscionable. (ECF No. 12 at 2). First, he argues that the agreement is an adhesion contract and includes "not readily ascertainable" material terms, which establishes that the contract is procedurally unconscionable. *Id.* at 3–4. Goraya also claims that the agreement is substantively unconscionable, pointing to its cost provision terms and the funneling of his claims to arbitration as contravening the remedial purpose and public policy behind the FMLA. *Id.* at 5–6.

Nevada law governs this Court's analysis of the agreement's validity and any applicable defenses. The arbitration agreement has a governing law clause, which states that "this Agreement and its interpretation, validity, construction, enforcement and performance, as well as disputes and/or claims arising under this Agreement, shall be governed by the law of the state where Employee works or worked at the time the arbitrable dispute or claim arose." (ECF No. 10-3 at 5). Neither party appears to dispute that Plaintiff worked in Clark County, Nevada during the relevant time frame. (*See* ECF No. 1 at 2; ECF No. 10 at 7 ("Nevada law requires Plaintiff Roopinder Goraya to arbitrate this matter.")). The Court will apply Nevada law accordingly.

In order to prove that a contract is unenforceable on the basis of unconscionability under Nevada state law, a party must demonstrate that the agreement is both procedurally and substantively unconscionable. *U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 190, 415 P.3d 32, 40 (2018). A contract does not need to be equally unconscionable on both accounts. Instead, a reviewing court will "apply a sliding scale" so that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required…and vice versa." *Gruden*, 2025 WL 2317407 at *3 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)); *see also*

*Kumar v. Tata Consultancy Servs. Ltd.*, 804 F. Supp. 3d 1133, 1140 (D. Nev. 2025) (applying sliding scale analysis). The Court will address Goraya's procedural and substantive unconscionability arguments in turn.

Under Nevada law, a contract is procedurally unconscionable when "a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Tough Turtle Turf, LLC v. Scott*, 139 Nev. 459, 460-61, 537 P.3d 883, 885 (2023) (citing *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004) (overruled on other grounds). Goraya raises both of these grounds independently in support of his proposition that the arbitration agreement is procedurally unconscionable. (*See* ECF No. 12 at 2–3).

Goraya maintains that the arbitration agreement constitutes a procedurally unconscionable adhesion contract. Goraya points to the power differential between Infosys and himself, arguing that he was presented with a "take-it-or-leave-it" employment contract conditional on the acceptance of the arbitration agreement by "one of the largest information technology companies in the world." (ECF No. 12 at 2). He argues that he had "no realistic ability to refuse a standardized arbitration agreement" without forfeiting the employment opportunity. *Id.* at 4. Even if the agreement advised prospective employees to consult an attorney before signing (*see* ECF No. 10-3 at 7), Goraya contends that he was still not afforded a meaningful opportunity to bargain over the terms of the arbitration agreement. (ECF No. 12 at 4).

The Court rejects Goraya's invitation to depart from precedent that has declined to apply the adhesion contract doctrine to employment contracts. *See CVSM, LLC v. Doe Dancer V*, 135 Nev. 633, 2019 WL 978679 at *2 (2019) ("[T]his court has declined to apply the unconscionable adhesion contract doctrine to employment contract cases because employment contracts can generally be negotiated") (citing *Kindred v. Second Jud. Dist. Ct.*, 116 Nev. 405, 411, 996 P.2d 903, 907 (2000)); *see also Sasiada*, 2024 WL 454994 at *3 ("[I]n Nevada, a court cannot apply the adhesion contract doctrine to employment cases as a matter of law."). Goraya interprets *Kindred* and other precedent as "describ[ing] the absence of prior application [of the adhesion contract doctrine], not a holding that the doctrine cannot reach employment agreements." (ECF No. 12 n. 1). Plaintiff cites no case and the Court is unaware of any case in which a court applying Nevada state law has applied the adhesion contract doctrine to employment agreements.

While Goraya points to the relative size of Infosys as a factor in favor of unconscionability (*see* ECF No. 12 at 2), Goraya offers no distinguishing facts to support why the adhesion contract should apply in the instant case. *Compare with Lofton v. Tesla, Inc.*, 2024 WL 4346419 at *3 (D. Nev. Sept. 30, 2024) (declining to apply adhesion contract doctrine to find unconscionability in employment dispute against multinational corporation Tesla, Inc.). While acknowledging the potential power and resource differential that may exist between Goraya and Infosys, the Court does not find any compelling facts in this case to justify a departure from numerous prior decisions that reject the application of the adhesion contract doctrine to employment cases. There is

therefore no basis for finding procedural unconscionability on the grounds of an adhesion contract.

Likewise, the Court finds that the terms of the arbitration agreement are sufficiently clear to establish that a valid contract was formed and to preclude a finding of procedural unconscionability. Goraya argues that the cost allocation provisions in the agreement, a material term, are impermissibly indefinite and not "readily ascertainable." (ECF No. 12 at 4–5). The arbitration agreement has provisions related to the dispute-initiating employee's costs and Infosys's costs.

> "[T]o the extent required by law Infosys will bear the arbitrator's fee and any other type of expense or cost that the Employee would not be required to bear if the dispute or claim was brought in court, as well as any other expense or cost that is unique to arbitration. If Employee is the party initiating the claim, Employee is responsible for contributing an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which Employee is (or was last) employed by Infosys."

(EFC No. 10-3 at 5). Goraya takes issue with the language "to the extent required by law." He characterizes this language as a "conditional carve-out" that Infosys can use to avoid payment "whenever no clear statutory mandate applies." (ECF No. 12 at 5). As a result, Goraya argues that it is impossible for him to assess the actual scope of his financial obligations under the arbitration agreement, which prevents a "meeting of the minds" to form a contract and also establishes his unconscionability defense to the contract's enforcement. *Id.* at 5–6.

The Court finds that cost allocation provision is sufficiently definite. "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554, 96 P.3d 1159, 1162 (2004); *see also Mehretu v. S. Nevada. Health Dist.*, 2022

WL 3347013 at *3-4 (D. Nev. Aug. 12, 2022) (evaluating size and font of arbitration agreement to determine if "inconspicuous"). Goraya presents no evidence that he was hindered in seeking legal assistance to determine what "the extent required by law" may require. He also offers no precedent that any court has found that "to the extent required by law," or similar language, constitutes an unascertainable term. While the Court is sympathetic to Goraya's concerns that this language is conditional, it also has no reason to doubt that the arbitrator selected in accordance with the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes (*see* ECF No. 10-3 at 4–5) would not hold both parties equally to their delineated financial obligations under the law and AAA's fee schedule (*see* ECF No. 13 at 6). Furthermore, the cost allocation language is presented in the same size font in a six-page document and is reasonably clear. (*See* ECF No. 10-3).

Because the cost allocation provision is adequately definite, the Court finds that a valid arbitration contract was formed between Goraya and Infosys. Additionally, the Court finds that Goraya has failed to demonstrate that the arbitration agreement is procedurally unconscionable.

Goraya argues that the agreement is substantively unconscionable, because the cost allocation provision "runs entirely in Infosys's favor" and compelled arbitration of FMLA claims "contravenes the public policy the statute embodies." (ECF No. 12 at 5–6). The Court need not address Goraya's substantive unconscionability arguments after finding that he has failed to demonstrate procedural unconscionability. *See U.S. Home Corp.*, 134 Nev. at 190 (requiring

"both procedural and substantive unconscionability to invalidate a contract as unconscionable.").

**B. Arbitration Agreement Applies to Goraya's Claims**

In the second step of its analysis, the Court will assess "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119. The arbitration agreement is explicit that it applies to "claims for discrimination, harassment or retaliation" under the "Family and Medical Leave Act of 1993." (ECF No. 10-3 at 2). Goraya's complaint only raises one cause of action against Infosys on the basis of "Interference with FMLA Rights in Violation of 29 U.S.C. § 2615(a)(1)." (ECF No. 1 at 4). He also seeks recovery of attorneys' fees and costs under state law pursuant to this Court's supplemental jurisdiction. *Id.* at 5. Because Goraya's claims arise out of and relate to his protected status under the FMLA, the Court finds that arbitration agreement squarely governs to his claims. Therefore, the Court finds that there is a valid and applicable arbitration agreement that compels the arbitration of Goraya's claims against Infosys.

**IV. CONCLUSION**

It is thereby ordered that Infosys's motion to stay proceedings and compel arbitration (ECF No. 10) is GRANTED.

DATED: October 27, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE